## CIRCUIT COURT OF THE CITY OF HOPEWELL

Heppert

v.

Heppert

September 12, 1986

Case No. (Chancery) 86-55

BY JUDGE W. PARK LEMMOND, JR.

I have reviewed the evidence heretofore presented in the matter concerning the issues of paternity, child support, and child custody involved in the *pendente lite* proceedings in this divorce suit. I have likewise reviewed rather extensively the law of *res judicata*.

"*Res judicata*-bar is the particular preclusive effect commonly meant by the use of the term '*res judicata*.' A valid, personal judgment on the merits in favor of Defendant bars relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies." *Bates v. Devers*, 214 Va. 667 (1974). This is the form of *res judicata* which is at issue in the case at bar.

The evidence presented included documents from the Petersburg Juvenile and Domestic Relations Court relevant to the claim of *res judicata* and, in addition thereto, extrinsic *ore tenus* testimony.

By virtue of the court exhibits, it is shown that on March 16, 1984, the wife filed a petition in the Petersburg Juvenile and Domestic Relations Court seeking support and maintenance for her two children from the husband. This was a sworn pleading.

Next in chronological sequence is an order of the Petersburg Juvenile and Domestic Relations Court dated August 27, 1984. *Inter alia*, this order stated that the custody of the infants would be awarded to their natural mother "with visitation rights being granted to the natural father, George Wayne Heppert . . . ." The order reflected that the custody of the two children was no longer at issue but had been reached by agreement of the parties.

Exhibit 3 offered by the wife purports to be a child support order entered September 26, 1984, by the Petersburg Juvenile and Domestic Relations Court. This exhibit, however, does not set out which juvenile and domestic relations court nor the style of the case. Nowhere else in the order are the parties mentioned nor the children. This exhibit is of questionable competence.

The final exhibit introduced by the wife is a document entitled "Record of Proceedings within the City of Petersburg Eleventh District Juvenile and Domestic Relations Court." The style of the case is appropriate, and the type of hearing appears to be one for custody and nonsupport. This record reflects that Mrs. Heppert and Marilyn Dean (sister of the husband) were present along with attorneys for both parties. The findings of the Court are stated to be, "His reason for not visiting children not valid. Ordered to pay $100 per month to Court for support of two children. To begin first week of October. Will pay by month. Must advise Court of change of address." The document is dated September 26, 1984, and signed by Judge Benjamin L. Campbell.

Rosalyn Vergara, attorney-at-law, was counsel for the wife in the Petersburg Juvenile and Domestic Relations Court in 1984. She appeared at the hearing in this matter on September 8, 1986, and testified that, indeed, the wife had petitioned for support and custody of both children, but that the husband had filed for custody of only one of the children, the daughter.

Ms. Vergara testified that at the trial the wife stated that the husband was the father of both. She reported that the home study contained some sort of declaration by the father denying paternity. It was not shown, by either party, whether this home study was introduced into evidence in the juvenile and domestic relations court proceedings or not. If it was not evidence in that proceeding, it cannot be considered at this time, and, in any event, it was not offered in evidence in this proceeding.

Ms. Vergara also testified that the husband was represented by counsel and that the support order emanating from the juvenile and domestic relations court proceeding called for child support for both children. Upon cross-examination, Ms. Vergara testified that custody of the disputed child was never litigated; that the only issue before the court was that of support. This would be congruous with the juvenile and domestic relations court order of August 27, 1984.

The wife testified that the husband denied paternity in court; however, she equivocated to the point that she was not sure whether he so testified

in court or made that statement out of court. She testified that the decisions of the juvenile and domestic relations court were never appealed.

Based upon the evidence hereinabove set out, the wife rested her case.

The husband presented testimony by his sister and his mother, both of whom attended the juvenile and domestic relations court proceedings but were separated as witnesses. The sister testified that she told the judge that the husband was trying to tell the court that the boy was not his. She stated that the judge replied that the court would not discuss that; that they were just there on custody. The husband's mother's testimony was not helpful since she was not present in the courtroom during the proceedings.

The above sets out all of the evidence upon which this court must now reach its decision as to whether or not the question of paternity of the boy is barred based upon the principal of *res judicata*.

The Court has found no authority as to the application of this principle to a factual situation like that in the case at bar.

There is substantial law to the effect that:

> When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties . . . .
>
> This doctrine does not apply, however, where the second action between the same parties is upon a different claim or demand . . . .

*Doummar v. Doummar*, 210 Va. 189, 191 (1969), citing approvingly the language of *Kemp v. Miller*, 166 Va. 661 (1936). *See also* the case of *K & L Trucking Co. v. Thurber*, 1 Va. App. 213 (1985), citing *Bates v. Devers*, 214 Va. 667 (1974), and *Doummar, supra*. Likewise *see Parris v. Appalachian Power Co.*, 2 Va. App. 219 (1986). In the latter, the court rejected the argument of *res judicata* based upon the second claim not being the same cause of action as the first.

Both of the cases cited from the Court of Appeals involved workers' compensation claims.

In *Hosier v. Hosier*, 221 Va. 827 (1981), the court rejected the plea of *res judicata* in a chancery matter involving custody and support. The rejection was based upon a finding that the judgment in the original suit did not go to the merits of the case and hence did not bar raising the issue in a subsequent proceeding. Quoting from *Storm v. Nationwide Mut. Ins. Co.*, 199 Va. 130 (1957), the Court stated, approvingly:

> A judgment is not *res judicata* if it does not go to the merits of the case. To constitute a bar, it must appear either upon the face of the record or be shown by extrinsic evidence that the previous question was raised and determined in the former suit, and that the former suit was determined on its merits.

From the wife's point of view, a well-reasoned argument can be set out that in awarding child support, the issue of paternity was necessarily decided, at least inferentially. Here it is to be noted that the support order of the Petersburg Juvenile and Domestic Relations Court awarded child support for both of the children. It also referred to the father as the "natural father," but did not indicate specifically whether there had been a finding as to his paternity of both children or not.

There is considerable law, as above stated, to the effect that a fact necessarily involved in an issue on which there has been a judgment is thereby conclusively settled in any suit thereafter between the same parties; that is, that the verdict could not have been rendered without deciding that matter. To further support this position, there is considerable encyclopedic reference to the proposition that where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the Court requires the parties to the litigation to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation in respective matters which might have been brought forward as a part of the subject in contest, but which were not brought forward, for whatever reason. This line of cases apparently stands for the premise that it is not essential that the matter should have been formally put in issue, in the former suit, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits.

The doctrine of *res judicata* applies to all matters which existed at the time of giving the judgment or rendering the decree in which the plaintiff had the opportunity of bringing before the court. *McDaniel v. McDaniel*, 175 Va. 402 (1940).

It would thus be the wife's argument that the judge of the Petersburg Juvenile and Domestic Relations Court could not have granted child support for the two children without having, at least by assumption, determined that the respondent in that action was the father of both children.

The husband may likewise present a well-reasoned argument, albeit couched to a greater degree in equitable principles, that the facts do not support a determination of the issue of paternity, and further that to so conclude by way of *res judicata* would be a gross miscarriage of justice.

The application of the rule of *res judicata* is not mechanical. It is a rule of cooperation and harmony between courts. It is axiomatic that the rule is to be applied in any case to promote justice, not to thwart it. *Crawford v. Loving*, 84 F.R.D. 80 (E.D. Va. 1979).

The husband would have the court determine that paternity was a collateral and not a direct issue in the juvenile and domestic relations court proceeding and hence *res judicata* does not apply, since it would not be sufficient that a matter was incidentally cognizable by the court and that adjudication was merely inferred by argument from such judgment.

Reviewing once again the records from the juvenile and domestic relations court proceeding, there is no mention whatsoever, direct or indirect, as to any determination of paternity. Further, there is extrinsic evidence that the husband made reasonable efforts to bring this issue to the court. The order of August 27, 1984, states that custody of the two children was no longer at issue due to agreement between the parties. Obviously, if the father disclaimed paternity as to the boy, custody of the boy would certainly not be an issue as far as he was concerned. This order did not even adjudicate support, but merely set out visitation rights. Again, the mere setting of visitation to the home where both children lived would not in and of itself infer paternity of both children since the father would be visiting the same place at the same time regardless of whether he was the father of one or both of the children.

All of the extrinsic evidence is consistent with a factual situation in which the issue of paternity was sought to be litigated, but the court did not provide an opportunity to the husband to present evidence on that issue.

This court is of the opinion that the bare fact that paternity might have been litigated is insufficient for the purposes of finding such issue to be *res judicata*. The Court finds from the evidence that a reasonable effort was made to interject that issue, but for whatever reason, this was not allowed.

It should be clearly noted that the circumstances of this case include the fact that both parents are deaf mutes. While there was an interpreter for proceedings in this court, there was no evidence that there was such an interpreter at the juvenile and domestic relations court proceedings.

In the opinion of this Court, a fact necessarily involved in an issue on which there has been a judgment may very well be conclusively settled in any subsequent suit between the same parties; however, the facts in controversy on the trial of an issue, but not necessarily involved in the issue, and for which no evidence was accepted by the court, although proper to it, though ever so important to its determination, are not settled by a judgment on such issue.

It cannot be said under the evidence presented in this case that the husband waived his defense of nonpaternity since, quite to the contrary, the evidence is that he made reasonable efforts to interject this issue into the proceedings, but was, for whatever reason, not permitted to do so.

Thus, in summary, this Court finds that the issue of paternity has not been adjudicated and hence the application of *res judicata* to that issue is not applicable.

The Court orders that blood testing be accomplished in this matter for the purpose of determining paternity of the boy, subject to any medical contraindications. The Court further orders that this testing be conducted by the Roche Biomedical Laboratory, Inc., in Richmond. Further, the husband and the wife each shall pay into the Clerk of this Court the sum of $160 not later than Friday, October 17, to cover the cost of the blood testing. The cost of the blood testing is approximately $300 for mother, putative father, and child, which includes the drawing of the blood samples. This Court will determine an equitable distribution of the costs upon completion thereof in accordance with the applicable statute.